**76 So.2d 405**

**Dr. James E. McCONNELL**

v.

**Mrs. Tandy T. WEBB.**

**No. 40685.**

Nov. 8, 1954.

Rehearing Denied Nov. 8, 1954.

Kent Breard, Monroe, for plaintiff-appellant.

J. B. Dawkins, Monroe, for appellee.

LE BLANC, Justice.

The original plaintiff herein, Dr. James E. McConnell, instituted this suit against the defendant, Mrs. Tandy T. Webb, seeking to recover from her liquidated damages in the amount of $2,790, together with attorney's fees in the sum of $1,000 for an alleged violation by the defendant of the provisions of the Federal Rent Control Laws.

The cause of action on which plaintiff based his demand is set out in paragraph five of the petition. The allegations are to the effect that defendant had had the premises which plaintiff rented from her registered under the Federal Rent Control Act and knew that the maximum authorized monthly rental which she could charge, the apartment being unfurnished, was $45 and in spite of such knowledge she illegally charged $75 per month for the entire period of thirty-one months he occupied it. Specifically he alleged "that said overcharge was a deliberate, wilful violation of

the federal rent control laws, and particularly a wilful violation of Section 1894 (b) and Section 1895 of Housing and Rent Act of 1949, 50 U.S.C.A.Appendix; that plaintiff is entitled under the provisions of said Act to liquidated damages in the the monthly rental paid by plaintiff to de- amount of three times the amount by which fendant exceeded the maximum rent which could be legally charged, together with costs and reasonable attorney's fees as determined by the Court; * * *."

The case was put at issue in the lower court and resulted in a judgment in favor of the defendant, rejecting the plaintiff's demands.

An appeal was taken to this Court and perfected and during the time it was pending, plaintiff-appellant died. After his death, his widow, Mrs. Ruby Lee Robertson McConnell, was appointed administratrix of his succession and, in accordance with Rule 14, Section 1 of the Rules of this Court, filed a motion to be allowed, in her capacity as administratrix, to come in and be admitted as party plaintiff-appellant and that the case be heard and determined according to law.

After the case had been argued and submitted in this court, counsel for appellee filed a motion to abate the appeal based on the ground that the district court, having dismissed the appellant's suit and he having since died, there is no cause of action remaining, the same having expired at his death. Counsel for the substituted party appellant contests the motion on the ground that it comes too late having been filed after the case had been argued and submitted on appeal and, alternatively, on the ground that the cause of action is a personal one which was inherited by the plaintiff's heirs and that an action so inherited does not abate by the death of one of the parties after issue has been joined, citing Code of Practice Arts. 21, 361; LSA-R.S. 13:3349.

The point that the motion to abate comes too late is not well urged and is without merit. The theory on which the motion to abate was filed is that by its nature, the action which the plaintiff originally brought expired at the time of his death; thereafter it no longer existed and could be prosecuted no further. The motion to abate was in effect a motion of no right or cause of action and as such it is a peremptory exception which, as Art. 345 of the Code of Practice provides, is one which shows that plaintiff cannot maintain his action either because it is prescribed or "because the cause of action has been destroyed or extinguished." Such exceptions as Art. 346, Code of Practice, further provides, "may be pleaded in every stage of the action, *previous to the definitive judgment; * * *."* (Italics ours.) In Roy v. Mutual Rice Co. of Louisiana, Inc., 177 La. 883, 149 So. 508, 512, it is stated that "The total lack of a right or cause of action may be taken advantage of at any stage of the proceedings, either in the Su-

preme Court or in the Court of Appeal." Several cases are cited as authority for the statement.

It becomes necessary now to dispose of appellants alternative contention, that is, that the action is a personal one which was inherited by the deceased plaintiff's heirs and that it did not abate by his death, issue having been joined prior thereto. In support of this contention appellant cites Arts. 21 and 361 of the Code of Practice and also LSA–R.S. 13:3349.

■ The cause of action presented in this case is purely in the nature of one in tort. That, we believe, is clearly indicated by the allegations of paragraph five of the plaintiff's petition on which it is predicated. It is therein made to appear that the demand is for certain liquidated damages as stipulated in a federal statute for a violation of some of its provisions. Those damages in the event of recovery would be treble the amount by which the monthly rental paid by the lessee of the leased premises exceeded the maximum rent which could be legally charged under the statutory regulations, together with costs and reasonable attorney's fees. A demand of a similar nature has been held by a decision of a Federal Court to be one in tort. See Caillouet v. American Sugar Refining Co., D.C., 250 F. 639, in which the syllabus 2 reads as follows: "A right of action to recover triple damages under the Sherman Anti-Trust Act July 2, 1890, c. 647, is one sounding in tort, and under the rule of the common law does not survive the death of the person injured."

■■ The common law rule to the effect that a personal action for damages for a tort expires at the death of the party who instituted it was adopted in the jurisprudence of this court many years ago and is still adhered to. The first case in which it is specifically accepted as the rule under our Civil Law is that of Hubgh v. New Orleans & Carrollton Railroad Co., 6 La. Ann. 495, decided in 1851, in which it was urged on the part of the plaintiff that the then Art. 2294 of the LSA–Civil Code, now Art. 2315, had enlarged the remedies given by the former laws in cases of damages arising from torts and that the action for damages by the widow of a man who had been killed through the negligence of the defendant who was his employer, should be maintained under that article. The argument was rejected and the rule was established to the effect that such actions do not survive in favor of the heirs of the deceased party who sustained an injury for which he had instituted an action in damages. It is hardly necessary to have to state, of course, that a series of amendments to Art. 2315 have from time to time provided for survival of such actions in certain designated persons in the order of succession as therein specified. And in this connection it may be well to observe at this point that it is not any of the survivors of the deceased plaintiff, named in Article 2315 of the LSA–Civil Code, who is seek-

ing to prosecute the appeal in this case, but the widow who is appearing solely in her capacity as administratrix of his succession. Any award that might be made therefore may not go to any of the decedent's beneficiaries under Article 2315 LSA-C.C., but to his estate and for the benefit of his creditors, if any, or any other interested parties as well as his heirs. Article 2315, LSA-C.C. has frequently been held to be sui generis and must be strictly construed. See Miller v. American Mutual Liability Ins. Co., La.App., 42 So.2d 328 and also McDonald v. Employers Mutual Casualty Co., D.C., 73 F.Supp. 198, in which numerous cases are cited.

It has consistently been held also that such actions as do not survive the death of the injured or damaged person do abate after an answer to the suit has been filed notwithstanding the provisions of Art. 21 of the Code of Practice

In Castelluccio v. Cloverland Dairy Products Co. Inc., 165 La. 606, 115 So. 796, 797 the heirs of the plaintiff who had died pending the appeal were permitted to prosecute the case to final judgment but that was because the demand of the plaintiff had been reduced to a judgment in his favor in the lower court and it was held that "this judgment, being property, necessarily formed a part of the estate transmitted by the deceased to his heirs, and was acquired by them immediately after his death." The Court nevertheless, in stating the issue presented to it, reaffirmed

the jurisprudence to the effect that an action for the recovery of damages for personal injuries is a personal one and does not survive the death of the beneficiary even though the Code of Practice states the general rule to be, under Art. 21, that they do not abate after answer has been filed.

The latest case on the subject is the very recent one of Gabriel v. United Theatres, 221 La. 219, 59 So.2d 127, where the principle was again recognized and the Court, on its own suggestion, took cognizance of Act 239 of 1946, now LSA-R.S. 13:3349, which provides that "there are no exceptions to the rule that an action does not abate by the death of one of the parties thereto after issue joined therein." After having taken notice of this act the Court nevertheless held that the Legislature in enacting an amendment to Art. 2315 of the LSA-Civil Code by Act 333 of 1948, had impliedly repealed it.

However, there is now presented another problem of a somewhat vexatious nature arising from the further fact, as again judicially noticed ex proprio motu, that the Legislature, in adopting the LSA-Revised Statutes of 1950, reenacted Act 239 of 1946, incorporating it therein under LSA-R.S. 13:3349, all of which may well prompt the question as to which law prevails, the amending Act of the Article of the Civil Code or the statute relating to the abatement of actions. But in veiw of the conclusion we have reached, a discussion of this problem can be pretermitted.

Notwithstanding the sweeping provisions of LSA–R.S. 13:3349 and its all inclusive language that *"there are no exceptions* to the rule that action does not abate by the death of one of the parties thereto after issue joined" we believe that in a sense, the language is no broader and no more comprehensive than that which is contained in Art. 21 of the Code of Practice, namely, that "actions (meaning *all* actions) do not abate by the death of one of the parties"; and if under a line of jurisprudence so firmly established and accepted to the effect that a personal, non-heritable action for damages in tort does abate with the death of the party who instituted it, an exception to the rule under Art. 21 of the Code of Practice has existed throughout these many years, we do not think that the Legislature intended, by a single stroke in making use of the words "there are no exceptions" *to the rule of abatement, to set* aside a principle so well recoginzed in both the common and the civil law.

To hold that there are no exceptions whatever to the rule we would have to ignore not only the rule of law as embodied in the jurisprudence that is involved in cases like the one presently under consideration, but also the substantive law that is involved in several different kinds of personal actions that are provided in the LSA–Civil Code. As intimated by Professor Henry G. McMahon in his comments on Act 239 of 1946, 7 La. Law Review,

p. 37, a strict construction of its all-inclusive language might well lead to serious and involved consequences in the field of strictly personal actions. For instance, Title III of the LSA–Civil Code deals with the provisions of our law regarding "Usufruct, Use and Habitation". LSA–C.C. art. 533. Chapter I of the Title which encompasses Articles 533 to 625 deals specifically with those relating to usufruct. Section 5 of the chapter treats of the expiration of the usufruct, and the first article under that chapter, Art. 606 declares tersely, but positively, that "The right of the usufruct expires at the death of the usufructuary". Elaborating a bit on the matter, Art. 607 provides that "The legacy made to any one of the revenues of a property, is a kind of usufruct, which also ceases and becomes extinguished by the death of the legatee, if the contrary has not been expressly stipulated. It is the same with all annual legacies as pensions of alimony and the like." Somewhat related also is Art. 2004 of the LSA–Civil Code which prescribes that an obligation to pay an annuity to a certain person during his life is personal as to both, the obligor and the obligee, "and is extinguished by the death of either."

Among other instances of purely personal actions as pointed out by Professor McMahon in a footnote to his article, and which were held by the Court to have abated with the death of the party who had instituted them, was one involving the

right of tutorship of minors, Succession of Deshotels, 144 La. 580, 80 So. 883, and another involving the right to be appointed Administrator of an estate, Succession of Coco, 183 La. 517, 164 So. 326. It is easy to see how the positive law relating to all such actions would be seriously affected if the provisions of LSA–R.S. 13:4339 were to be strictly construed.

We have concluded therefore that that statute is no broader and no more comprehensive in its meaning than was its counterpart, Art. 21 of the Code of Practice. At the most, both are procedural in their nature and cannot have the effect of overthrowing all the substantive law relating to purely personal rights as prescribed in the Code as well as to those so firmly imbedded in our jurisprudence. The statute no doubt may have its proper application in all other actions but it cannot be held to have effected a change in the rights and obligations of parties arising under substantive law and sought to be enforced in actions that are strictly personal.

The proper decree to render in a case like this, as pointed out in Succession of Deshotels, supra, is to dismiss the appeal and require the parties to share the costs to the extent incurred by each.

The appeal is dismissed, the parties to pay the costs to the extent incurred by each.

FOURNET, C. J., being of the opinion that the judgment appealed from is correct

and should be affirmed, concurs in the results.

PONDER, J., absent.