84 So.2d 217 (1955)
Mr. and Mrs. Hillard COVEY
v.
MARQUETTE CASUALTY COMPANY et al.
No. 20464.
Court of Appeal of Louisiana, Orleans.
June 15, 1955.
On Rehearing January 3, 1956.
Bernard J. Bagert, New Orleans, for plaintiffs and appellants.
James J. Morrison, New Orleans, Rudolph R. Schoemann, New Orleans, and White & Bowes, Gretna, of counsel, for defendants and appellees.
*218 McBRIDE, Judge.
This is one of the two consolidated cases which grew out of the automobile accident which occurred in the bridge circle in Jefferson Parish on November 16, 1952. The plaintiffs are Hillard M. Covey, the driver of one of the automobiles involved, and his wife, Mrs. Lettie Allen Covey, who was his guest passenger seated beside him in the automobile. Their suit, which is directed against Alfred J. Landry and Marquette Casualty Company, his insurer, was dismissed and they have appealed.
For the reasons stated in the opinion and decree this day handed down by us in the case of Jacobs v. Landry, La.App., 82 So.2d 481, Mr. and Mrs. Covey are entitled to recover their damages from Alfred J. Landry and Marquette Casualty Company, in solido.
At the outset we are constrained to say that Mr. and Mrs. Covey have greatly inflated their claims and have been guilty of making certain allegations which have absolutely no foundation.
Covey seeks recovery of $800 for medical expenses incurred in connection with his wife's injuries, $250 for the services of a maid allegedly employed while his wife was incapacitated, $280 for loss of his salary for two weeks, $409.44 for damages to his automobile, and $1,500 for personal injuries. He alleges he suffered extensive bruises, was shaken up, and experienced extreme shock and nervousness as a result of the injuries to his wife. Covey cannot recover for personal injuries as he was not injured in the collision between the two automobiles and he cannot recover for mental suffering because of injury to his wife. Brinkman v. St. Landry Cotton Oil Co., 118 La. 835, 43 So. 458; Sperier v. Ott, 116 La. 1087, 41 So. 323, 7 L.R.A.,N.S., 518; Hughes v. Gill, La.App., 41 So.2d 536; Seligman v. Holladay, La. App., 154 So. 481; Sherwood v. Ticheli, 10 La.App. 280, 120 So. 107; Alston v. Cooley, 5 La.App. 623; Barrere v. Schuber, 5 La.App. 67; Knox v. Allen, 4 La.App. 223.
Mrs. Covey seeks $24,750 for her physical injuries.
There is testimony from Mrs. Lozier, the cousin of Mrs. Covey who was a passenger in Covey's automobile, to the effect that after the accident all of those who had been riding in the automobile went to an establishment where they drank coffee, and this testimony was adduced by the defendants in an endeavor to show that no one had been injured in the accident. It may be that the party did partake of coffee after the accident happened, but Mrs. Lozier was handling the truth lightly when she testified that injuries had befallen no one.
On the evening of the accident Mrs Covey was taken to the Accident Room at Touro Infirmary where she was seen by Dr. Fisher, the same physician who treated Mr. and Mrs. Jacobs. She was admitted to said hospital on the same date and remained there two days when she deserted. She stated she was compelled to leave because of her husband's financial inability to pay a hospital bill. She was readmitted November 19 and remained in Touro Infirmary until November 25. On December 27, 1952, she again went to the hospital where she stayed until January 1, 1953, as a result of an aggravation of her injuries which she experienced while descending a stairway in her home.
We have not the slightest doubt that Mrs. Covey's three stays in the hospital were made necessary by the injuries she received in the accident. Dr. Louis J. Gehbauer, on behalf of Landry's insurer, examined Mrs. Covey on January 29, 1953, and in connection with the examination had occasion to check the hospital records. These show that when Mrs. Covey was first admitted to the infirmary the diagnosis was emotional disturbances, lumbosacral sprain, and multiple contusions. On the second admission she exhibited the same complaints. The X-rays showed some spasm of the muscles of the lumbar spine; the X-ray pictures of the abdomen were negative. The third admission to the hospital was occasioned as a result of severe pains in the back.
*219 Dr. Fisher testified that in addition to the back injury which was of moderate severity, Mrs. Covey suffered shock and sustained multiple contusions, a sprain of the left ankle, and distended abdomen. He stated his patient was not free of back symptoms until about the middle of September, 1953; the distension of the abdomen was only a temporary condition; the shock was of a mental type and lasted for about twenty-four hours; the ankle sprain disappeared in three or four weeks. Dr. Fisher says he saw Mrs. Covey on sixty-five occasions in all.
Dr. Gehbauer, who examined Mrs. Covey on January 29, 1953, at the behest of Marquette Casualty Company, found that she had suffered mild multiple contusions, a lumbosacral sprain, a sprain of the ankle, and some emotional disturbances; the doctor thought her multitude of complaints suggested neurotic tendencies. He believed the period of disability from the back injury would not last more than a few days. Dr. Fisher testified that he treated Mrs. Covey's back until the middle of September 1953 and his testimony is not contradicted.
On October 7, 1953, Dr. Edmund Connely, a neurologist, saw and examined Mrs. Covey and came to the conclusion that there was no evidence of organic nerve lesion or neurosis.
We feel sure that Mrs. Covey suffered no permanent injuries in the accident, and while the injuries were not of serious character, they were painful and effected her incapacity for a considerable period. Mrs. Covey and Dr. Fisher attributed certain emotional disturbances to the accident, but we believe these were due to other causes. Dr. Fisher conceded that the emotional upsets could just as well have been caused by an unhappy domestic life. The record shows that in November of 1953 Mrs. Covey filed suit for a separation from bed and board in the Civil District Court for the Parish of Orleans, in which she alleged that her husband had been continually guilty toward her of physical and mental cruelty.
Mrs. Covey is 48 years of age, and considering the nature of her injuries, the pain and discomfort, her hospitalization on three occasions and the incapacity for a time, we believe that an award to her of $2,000 would be adequate under the circumstances.
Hillard M. Covey is entitled to recover the sum of $250 which he alleged and proved was incurred for his wife's hospitalization; he is also entitled to recover $345 for Dr. Fisher's bills, $50 for drugs and medicines, and $409.44 for the damage inflicted on his automobile, or a total of $1,054.44.
Covey also claimed that because of his wife's incapacity he employed a maid for four months at a daily wage of $3 and for this he seeks $250. We are not satisfied with Covey's testimony that such expenditure was made, so we will disallow the claim therefor. Nor can Covey recover $280 for loss of salary for a two-week period. He claims he remained away from his work to take care of his wife. Of course there should be no recovery for this item as it seems to us that Covey should have made other arrangements to have his wife's welfare looked after.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of Hillard M. Covey for $1,054.44 and in favor of Mrs. Lettie Allen Covey for $2,000 against Alfred J. Landry and Marquette Casualty Company, in solido, with legal interest from judicial demand; it is further ordered, adjudged and decreed that the reconventional demand of Alfred J. Landry be dismissed; all costs are to be paid by the defendants.
Reversed.

On Rehearing
JANVIER, Judge.
On June 15, 1955, in our original opinion we set forth our reasons for concluding that Alfred J. Landry and Marquette Casualty *220 Company were solidarily liable to Mrs. Lettie Allen Covey in the sum of $2,000 and to Hillard M. Covey in the sum of $1,054.44, and we rendered our decree in accordance with those conclusions.
After that decree had been rendered, it was brought to our attention that, before the matter was submitted to us, Hillard M. Covey had died and it necessarily followed that our decree in his favor was a nullity. Accordingly we granted a rehearing but limited the rehearing to the substitution of proper parties in lieu of the deceased plaintiff, Hillard M. Covey.
Mrs. Covey then appeared by motion to which were attached affidavits purporting to show that she was the widow of the deceased, Hillard M. Covey, and that one minor child, Ernest Maurice Covey, survived the deceased, and Mrs. Covey suggested in the said motion that she, as widow, and Ernest Maurice Covey, as the sole minor child of the deceased, should be substituted in his stead as parties plaintiff and permitted to proceed with the prosecution of the suit in accordance with the provisions of Article 2315 of our LSA-Civil Code. In the same motion, Mrs. Covey suggested that, in the alternative, that it be determined that the proper parties to succeed to the rights of the deceased, Hillard M. Covey, were not his survivors as designated in the said codal articles but were his legal heirs, she, as administratrix of the estate of the deceased, should be permitted to prosecute the action for the benefit of his heirs, and in that alternative she asked that in her said capacity she be substituted as party plaintiff. To this motion, in addition to the affidavits, Mrs. Covey attached a copy of her letters of administration showing her to be the administratrix of the estate of her deceased husband.
The defendants, being confronted with our decree which was final insofar as it held that they were liable to Mrs. Covey in the sum of $2,000 and to Mr. Covey in the sum of $1,054.44, and realizing that there remained open only the question of who, if anyone, should be substituted as party plaintiff in the place of Covey, applied to the Supreme Court for a writ of certiorari and review. This application was refused by the Supreme Court with the statement: "Application premature since the Court of Appeal has granted a rehearing in this case."
On behalf of defendants there was then filed a motion suggesting that the Court strike and suppress the motion to make parties and the evidence sought to be introduced on the ground
"that the Court does not have jurisdiction rationae materiae under the Constitution and laws of the State of Louisiana to receive said evidence herein, that to grant said motion would deprive defendants of their opportunity to confront and to cross-examine the appellants as to the existence of other children or heirs of the deceased, and would expose defendants to the possibility of other suits by other children of the deceased not parties to this proceeding, should same exist, at the same time depriving defendants of any opportunity to protect themselves from suits or claims by other children of the said deceased who may exist, and who are not parties to this proceeding."
The first question which is presented is whether or not, after the death of Hillard M. Covey, the suit on his behalf abated, that is, whether or not by his death the defendants were relieved of all possibility of liability to anyone at all, and the second question is, if the action did not completely abate, who should be substituted in the place of the deceased Covey.
It is important at the outset that it be noted that the original plaintiff, Hillard M. Covey, had not obtained a judgment in his favor at the time of his death, and that therefore there existed in him at that time no property right which could be inherited by his heirs at law. As the Supreme Court said in Gabriel v. United Theatres, Inc., 221 La. 219, 59 So.2d 127, 129:
"* * * Had the plaintiff Alice Gabriel Strain prevailed in the district court, and defendants appealed, there *221 is no question that Marcelian Strain, might, under the general laws of inheritance, have succeeded to her property rights under such judgment, in the absence of other heirs with a higher right. However, she was cast in the district court, and having lost her suit, had no proprietary rights to transmit. The only right to which the husband succeeded was the statutory survival of action under Article 2315, which had to be exercised in accordance with the terms of the statute. * * *"
In discussing this principle the Court, in McConnell v. Webb, 226 La. 385, 76 So.2d 405, 408, cited its earlier decision in Castellucio v. Cloverland Dairy Products Co., Inc., 165 La. 606, 115 So. 796, and, referring to that decision, said that the heirs of the plaintiff were allowed to prosecute the appeal
"because the demand of the plaintiff had been reduced to a judgment in his favor in the lower court and it was held that `this judgment, being property, necessarily formed a part of the estate transmitted by the deceased to his heirs, and was acquired by them immediately after his death.'"
By the principle that there are no rights in the legal heirs where the original claimant has filed suit on a non-heritable claim and has died without obtaining a favorable judgment, the heirs and, consequently, the administratrix, are eliminated from further consideration, and there is then presented the question of whether there remains any right in the survivors who, under Article 2315 of the LSA-Civil Code, are designated as the persons to whom "this action shall survive in case of death".
Though various judicial decisions have evidenced disagreements or misunderstandings as to the effect of the survival provisions, which, as a result of amendments, now appear in Article 2315 of our LSA-Civil Code, it seems to us that the last of those decisions, McConnell v. Webb, supra, very clearly distinguishes between the original right of the injured party which is not inherited and the right of the designated survivors when the injured party has died before obtaining a favorable judgment. In that decision it is stated that
"such actions do not survive in favor of the heirs of the deceased party who sustained an injury for which he had instituted an action in damages."
The Court recognized that, though the right of action does not survive "in favor of the heirs", there is a right of survival "in certain designated persons", saying:
"It is hardly necessary to have to state, of course, that a series of amendments to Art. 2315 have from time to time provided for survival of such actions in certain designated persons in the order of succession as therein specified. * * *"
And then the Court, after making that statement, continued to say that it was the estate of the decedent which was attempted to be substituted as party plaintiff, since the widow appeared in the capacity of administratrix and that the administratrix had no rights as such to be substituted. And the Court said that this was so because, should the administratrix be substituted as party plaintiff, any award which might be made to her would not go solely to the survivors mentioned in Article 2315, but would go to "his creditors, if any, or any other interested parties as well as his heirs."
It is quite clear then that in such situation as that presented here, which cannot be distinguished from that which confronted the Court in McConnell v. Webb, supra, the legal heirs of the decedent have no rights which can be asserted in the suit which was filed by the original plaintiff. That action is not heritable and therefore they have not inherited it. However, the article, as now amended, creates a new right in the various survivors who are designated and under that right they, as survivors though not as heirs, may, by substituting themselves, continue with the suit which was commenced by the original plaintiff, provided they do so within one year of the death of the original plaintiff.
*222 In McConnell v. Webb, supra, the Supreme Court discussed fully the several non-abatement statutes which have been considered and held that those statutes, which are now to be found in LSA-R.S. 13:3349 and as now further amended by Act 59 of 1954, do not affect such actions as this and that such actions being personal do abate by the death of the original plaintiff to the extent that the right which was asserted by the original plaintiff is not inherited by the heirs; that that action does abate. However, as shown by the Court in McConnell v. Webb, supra, a new right of the survivors comes into existence and may be exercised by them. Having found then that the original action had abated and that only the administratrix had attempted to make herself a party, the Supreme Court dismissed the appeal. Here there are survivors who have appeared and have asked to continue the action, and we think that because of the provisions of our codal article, they have that right, provided they can show that they are the survivors.
We cannot refrain from commenting on the strange result which may sometimes occur if there be applied in all cases the principle that heirs at law do not succeed to the rights of the original plaintiff who, having brought suit under Article 2315, dies before obtaining a favorable judgment. Let us assume that a married man who is the father of minor children and major children has, as the sole asset of his separate estate, one valuable building valued, let us say, at $100,000 and that this building is destroyed by the carelessness of a third person, and that the owner, having brought suit against the tortfeasor for the value of the destroyed building, dies before obtaining judgment.
If his heirs have no right to continue the action, it may well be that this entire separate estate of the deceased will thus have been diverted from his heirs to his "survivors" and that thus the major children take no part of the recovery in damages which goes entirely to the wife who had no interest in his separate property and to the minor children.
If, however, it should be held that wherever there are physical injuries and also property damage the claim for physical injuries and resulting suffering is non-heritable and therefore does not pass to the heirs, but goes to the survivors designated in the codal article, and that the claim for damages to a physical asset is heritable and passes to the heirs at law, then there would often be two different groups of claimants among whom would be divided the two separate claims.
We see no solution to the problem except to follow the established jurisprudence to the effect that, where the claim is one arising under Article 2315, at the death of the claimant the survivors and not the heirs have the right to continue the action.
Since the defendants have put at issue the question of who are the survivors, we find it necessary to do what the Supreme Court ordered done in Gabriel v. United Theatres and remand this case to the District Court for the sole purpose of having parties plaintiff made herein, "if legally possible to do so, but for no other purpose." [221 La. 219, 59 So.2d 129.]
It is therefore ordered, adjudged and decreed that, insofar as our decree ran in favor of Hillard M. Covey, it be annulled, avoided and reversed, and that the matter be now remanded to the Twenty-fourth Judicial District Court for the Parish of Jefferson for further proceedings according to law and consistent with the views herein expressed.
Reversed in part and remanded.