ELLIS, Judge.
This case was consolidated for the purpose of trial with John Lemaire v. Pellerin, La.App., 102 So.2d 493, with separate judgments to be rendered in each case. For the facts and the holding of this court on the question of liability, see the reasons given in the Lemaire case this day decided.
There are but two questions to be decided by the court in this case. First, counsel for plaintiff filed a motion to dismiss the appeal and, secondly, the court will have the question of quantum.
The motion of counsel for plaintiff to dismiss the appeal is based upon the fact that the judgment in this case was rendered on November 6, 1957 and all parties were served with written reasons for the said judgment. On November 8, 1957, judgment was signed by the District Court. On November 25, 1957, defendant-appellant filed a written motion for a suspensive appeal, and, in the alternative, a devolutive appeal. Bond was filed by the defendant on November 26, 1957.
The defendant-appellant herein having failed to comply with Article 575 of our Code of Practice in order to obtain a suspensive appeal was not entitled to such and obtained none. However, his appeal is valid as a devolutive one. See Courvelle v. Eckart, La.App., 49 So.2d 658, and cases cited therein.
The motion to dismiss is overruled and the appeal sustained as a devolutive one.
Quantum
As a result of the collision the plaintiff sustained a fracture of the outer half of the weight bearing surface of the right shin bone which resulted from the wheel of the Lemaire automobile having come to rest on his right knee. Dr. McClellan stated that when he was brought to the hospital the plaintiff was in a state of shock and was suffering pain as a result of contusions over his body and severe damage around the knee. Due to the severity of the injury to the plaintiff’s knee he was referred by Dr. McClellan to Dr. James Gil-ley who testified that his examination and treatment took place in the Palms Hospital in Abbeville, Louisiana, and that following an X-ray examination on April 30, 1953, a surgical exploration of the right knee was done and an open reduction of internal fixation of the fractured fragments was done. A cast was applied to the knee joint, complete immobilization was maintained for six weeks, after which the plaster was removed and plaintiff was fitted with what is termed as a weight-bearing brace which short-circuited the weight of the extremity around the knee and placed it upon the right buttocks so that the plaintiff could walk. Plaintiff wore this brace approximately four months with this weight shifting device and the latter was removed and he wore the plain brace for another month. Dr. Gilley testified that during the period that the brace was used, immobilization, diathermy treatment and forced movement of the knee was attempted but that the plaintiff’s response was rather slow. He remained under Dr. Gilley’s treatment until September 10, 1953, when he was moved to Lake Charles and placed under the care of Dr. Charles Hatchette. Dr. Gilley last saw the plaintiff on March 1954 and as of that examination testified that plaintiff, who had been a welder in oil field work, in his opinion would not be able to carry on such duties if he had to climb, lift pipe and other *501 objects during the time that he had to wear a brace. On March 24, 19S4, Dr. Gilley described plaintiff’s condition as one in which he had lost approximately 90 degree movement in the knee and the range of motion was 180 extended to 110 degrees, which was greater than a right angle, however, at that time plaintiff was still under the treatment of Dr. Hatchette. He thought that the residual disability and loss of flexion ■in plaintiff’s knee would be 60 degrees.
Dr. Hatchette testified that Dr. Gilley had .■sent the plaintiff to him for further treatment on September 26, 1953, at which time ■the latter was still wearing a brace and he found the knee badly swollen, with extension good but flexion amounted to only 15 ■degrees and he could not walk without the “brace and was apparently suffering pain be•cause of this fact. His main difficulty was ■due to the inability to flex the knee as a re.sult of the injuries suffered in the accident. Physiotherapy was used over a period of "time with some benefit, however, Dr. Hatchette stated that he reached a stationary plateau of treatment which was over- ■ come by placing the plaintiff in a local hospital and manipulation under general anaes-thesia, which resulted in a considerable swelling of the knee. After the knee had .gone down he had considerably more motion than previously which amounted to about 50 degrees. This manipulation under .general anaesthesia was done several times thereafter with a very satisfactory result in that plaintiff obtained flexion to slightly beyond 90 degrees which allowed him to walk normally and without a limp. Dr. Hatchette stated that on May 4, 1954, plaintiff was discharged from treatment and at that time was able to work, with difficulty in kneeling. Dr. Hatchette testified that plaintiff could not do everything that was required of him as a welder but that he was able to work. Plaintiff was practically disabled during the entire time of his treatment by Dr. Hatchette until the date of his discharge, although he had attempted to work ■as suggested by his doctor but did so in ;pain. Dr. Hatchette was of the opinion that the plaintiff had reached maximum improvement when discharged with a permanent estimated disability of approximately 25% loss of use of the leg which would make it difficult for the plaintiff to do any kind of work that required kneeling.
For the above described injuries, pain, suffering, loss of wages, the lower court awarded the sum of $6,000 and in addition thereto the amount of $1,049.85, representing medical expenses to the date of the trial. There does not seem to be much dispute with regard to the quantum as awarded by the lower court for there is no answer to the appeal, and, in fact, counsel for plaintiff asked that it be affirmed which may be due to the limited coverage due in this case under the policy of insurance, and the defendant-appellant, Fidelity Mutual Insurance Company, in brief filed by its counsel has not questioned this award.
For the above and foregoing reasons the judgment of the district courts is affirmed at the cost of defendant-appellant.