125 So.2d 12 (1960)
John Stanley DUMAS, Plaintiff and Appellant-Appellee,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant and Appellee-Appellant.
No. 131.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1960.
Rehearing Denied December 14, 1960.
*14 Gravel, Sheffield & Fuhrer, by C. F. Gravel, Jr. and Leonard Fuhrer, Alexandria, for plaintiff-appellant-appellee.
Stafford & Pitts, by Grove Stafford, Sr., Alexandria, for defendant-appellee-appellant.
Before TATE, SAVOY and CULPEPPER, Judges.
CULPEPPER, Judge.
This is a suit for damages for personal injuries arising out of an automobile collision. On December 15, 1956, John Stanley Dumas, the original plaintiff, was injured while riding in a car driven by his wife. His worst injury was a badly broken ankle.
On November 21, 1957, Mr. Dumas filed this suit seeking damages from United States Fidelity and Guaranty Company, his wife's insurer. Dumas alleged in his petition that the accident was caused by the negligent driving of his wife. The defendant filed an answer denying any negligence on the part of Mrs. Dumas, but when the case was called for trial in November of 1958 the defendant insurance company, at the outset, stipulated into the record that Mrs. Dumas was guilty of actionable negligence. The only evidence introduced into the record was with reference to the amount of damages to be allowed.
After the case was tried, and pending submission for decision, defendant filed a motion to reopen the evidence. Plaintiff objected but after hearing the Court granted the motion and the evidence was reopened for the purpose of receiving the additional evidence to be tendered by the defendant, and, in addition, certain evidence on behalf of plaintiff, which the Court determined had been erroneously ruled out during the original trial.
The case was then set for the taking of this additional evidence on October 1, 1959, but a few days before that date, Mr. Dumas died of an illness, totally unrelated to his injuries. His widow, a major daughter by a former marriage, and the executor of his estate filed a joint motion asking that all three be substituted as parties plaintiff and be permitted to continue the prosecution of this suit. The defendant objected to the motion on the grounds that the entire cause of action had abated by the death of the plaintiff, and, in the alternative, in the event the court should determine that the widow alone is entitled to prosecute the action, that she is precluded from doing so because of her contributory negligence in causing the accident which resulted in injuries to her husband. This motion was apparently referred to the merits, the trial was completed and, in his written opinion, the District Judge ruled that the executor alone, and not the widow or daughter, was entitled to be substituted as a party plaintiff. The lower court then signed a judgment awarding the executor $2,146.99 for medical expenses, $3,350 for loss of earnings, and $7,500 in general damages, or a total of $12,996.99. From this judgment the defendant has appealed.
*15 The widow and major daughter have also appealed from the judgment of the District Court in order to preserve their rights to be substituted as parties plaintiff in the event that the Court of Appeal should find that the executor cannot be substituted. The executor has answered the defendant's appeal, praying for an increase in the amount of the judgment.
The primary legal issue is whether this action abated on the death of Mr. Dumas, and, if not, then who is entitled to be substituted as the plaintiffthe executor or the widow or the major daughter. The first argument of the plaintiff is that the lower court was correct in ruling that the executor alone was entitled to prosecute this action to a conclusion. The Judge of the trial court, in a lengthy and well-reasoned opinion, pointed out the difficulty of reconciling the jurisprudence of our Supreme Court and our Courts of Appeal interpreting Code of Practice, Article 21, as amended, with reference to the abatement of actions, and LSA-C.C. Article 2315 concerning tort actions and the survival thereof. However, the trial judge did not find it necessary to resolve the perplexing legal problems created by this jurisprudence because he decided that when the defendant insurance company made a judicial confession of negligence this changed the nature of the pending suit from a tort claim for personal injuries to a suit on a property right. The opinion of the lower court reads in part, as follows:
"However, the question to be determined is simply whether or not Mr. Dumas was vested with a `property right' at the time of his death. If he was, then someone is entitled to prosecute this suit to a conclusion and ascertain the amount or value of that property right.
"To the mind of this writer it appears entirely unreasonable to say that the decedent was not possessed of a `property right' at the time of his death, when the defendant had during his lifetime judicially admitted that it was indebted to him. It was none the less a property right, even though the amount of the indebtedness remained to be judicially fixed. It would appear that after the judicial admission of liability was made, we were then dealing, not with a mere claim for personal injuries, etc., but simply with the amount of the judgment to be rendered in compensation for the injuries, etc. In this view, the plea of abatement can not stand, and the remaining question relates to which party or parties should be substituted in this proceeding.
"Inasmuch as the amount to be awarded herein belonged to the estate of Mr. Dumas, and since his estate is under administration, it follows that the proper party to be substituted herein is the administrator, the widow and daughter having only a residuary interest in the estate. Accordingly, the plea of contributory negligence against Mrs. Dumas should be overruled."
No statutory or jurisprudential authority has been cited to us in support of this position. Plaintiff argues that under the provisions of Article 2291 of our LSA-Civil Code a judicial confession amounts to full proof against him who has made it and cannot be revoked unless made through an error in fact. Plaintiff points out that Article 2291 is found in that portion of our Civil Code dealing with conventional obligations and he urges that the judicial confession of negligence in this case changed the very nature thereof from one sounding in tort to one sounding in contract. Plaintiff then concludes that this being an action on a contract for the payment of money, it passes to the estate of the decedent just as any other heritable obligation under Article 2008 of the LSA-Civil Code.
It is our opinion that, in a tort action, a judicial confession of negligence does not create a property right in the *16 plaintiff nor does it change the nature of the suit from one sounding in tort to one based on a conventional obligation. We are aware, as counsel for the plaintiff has pointed out, that LSA-Civil Code, Article 2291 dealing with judicial confessions is found in the Title dealing with conventional obligations, but we note that it is placed by the redactors of the Code in Chapter 6, which deals with the proof of obligations. Article 2291 reads, as follows:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
"It amounts to full proof against him who has made it.
"It can not be divided against him.
"It can not be revoked, unless it be proved to have been made through an error in fact.
"It can not be revoked on a pretense of an error in law."
Under the provisions of Article 2291 quoted above, the principal effect of a judicial confession is that it amounts to full proof against him who has made it and, therefore, relieves his adversary of the necessity of introducing evidence as to the facts which have been admitted. In this case the only fact which defendant judicially confessed was that Mrs. Dumas was guilty of negligence proximately causing the accident. This relieved the plaintiff of introducing any evidence as to negligence. However, the defendant did not confess that it was indebted to the plaintiff in any amount whatsoever. The plaintiff still had to introduce evidence and prove by a preponderance thereof that he had been damaged. It is, therefore, our conclusion that, by defendant's judicial confession of negligence alone, no property right was vested in the plaintiff and the nature of the case was not changed from a tort claim for personal injuries to a suit to enforce a conventional obligation.
Plaintiff argues next that by virtue of our "direct action statute". LSA-R.S. 22:655, the defendant's judicial confession of negligence creates a property or contractual right which is heritable under our law. Plaintiff cites the case of West v. Monroe Bakery, Inc., 1950, 217 La. 189, 46 So.2d 122, which holds that an injured party acquired "substantial rights" against the liability insurer of the tort feasor, which became "vested" at the moment of the injury. Plaintiff argues that the effect of our direct action statute is to make a liability insurance contract one containing a stipulation pour autrui, or contract for the benefit of third parties. This argument is without merit. The case of West v. Monroe Bakery, Inc., supra, simply holds that Act 55 of 1930, the direct action statute, expresses the public policy of this state that liability insurance policies are not issued primarily for the protection of the insured but for the protection of the traveling public. Therefore, an injured third person does not lose his cause of action under the policy for the breaching of an agreement by the insured with the insurer after the accident has occurred. This principle is well established in our law but does no more than protect the injured person's right or cause of action for damages. It does not grant him a heritable property right against the insurer.
As we have stated above, the defendant admitted negligence, thereby relieving plaintiff of the necessity of introducing evidence on this issue, but the defendant did not confess judgment in favor of the plaintiff in any amount whatsoever. The plaintiff had to introduce evidence to prove his damages. The effect of the direct action statute is simply to allow the injured third party to bring his action directly against the insurer, without the necessity of naming the insured as a party defendant. Where an injured party brings his action directly against the insurer instead of against the insured, he still has the same burden of proof and must still prove his damages, else he will not be *17 awarded judgment. We fail to understand how, under the circumstances of this case, our direct action statute could be construed so as to mean that the defendant's admission of negligence ipso facto created a stipulation pour autrui in favor of the plaintiff to pay him any amount whatsoever, unless he made due proof of his damages.
Having come to the conclusion that the defendant's admission of negligence did not vest in the plaintiff a heritable property right, we now pass to a consideration of the issue as to whether the death of Mr. Dumas, during the pendency of his tort action in the District Court and before final judgment was rendered, caused the action to abate, and, if not, to whom did it survive. This precise question has been answered in the case of Covey v. Marquette Casualty Company, 1956, 84 So.2d 217, 221, in which the Orleans Court of Appeal held as follows in an opinion written by Judge Janvier:
"Though various judicial decisions have evidenced disagreements or misunderstandings as to the effect of the survival provisions, which, as a result of amendments, now appear in Article 2315 of our LSA-Civil Code, it seems to us that the last of those decisions, McConnell v. Webb, supra [226 La. 385, 76 So.2d 405], very clearly distinguishes between the original right of the injured party which is not inherited and the right of the designated survivors when the injured party has died before obtaining a favorable judgment. In that decision it is stated that
"`such actions do not survive in favor of the heirs of the deceased party who sustained an injury for which he had instituted an action in damages.'
"The Court recognized that, though the right of action does not survive `in favor of the heirs', there is a right of survival `in certain designated persons', saying:
"`It is hardly necessary to have to state, of course, that a series of amendments to Art. 2315 have from time to time provided for survival of such actions in certain designated persons in the order of succession as therein specified. * * *'
"And then the Court, after making that statement, continued to say that it was the estate of the decedent which was attempted to be substituted as party plaintiff, since the widow appeared in the capacity as administratrix and that the administratrix had no rights as such to be substituted. And the Court said that this was so because, should the administratrix be substituted as party plaintiff, any award which might be made to her would not go solely to the survivors mentioned in Article 2315, but would go to `his creditors, if any, or any other interested parties as well as his heirs.'
"It is quite clear then that in such situation as that presented here, which cannot be distinguished from that which confronted the Court in McConnell v. Webb, supra, the legal heirs of the decedent have no rights which can be asserted in the suit which was filed by the original plaintiff. That action is not heritable and therefore they have not inherited it. However, the article, as now amended, creates a new right in the various survivors who are designated and under that right they, as survivors though not as heirs, may, by substituting themselves, continue with the suit which was commenced by the original plaintiff, provided they do so within one year of the death of the original plaintiff.
"In McConnell v. Webb, supra, the Supreme Court discussed fully the several non-abatement statutes which have been considered and held that those statutes, which are now to be found in LSA-R.S. 13:3349 and as now *18 further amended by Act 59 of 1954, do not affect such actions as this and that such actions being personal do abate by the death of the original plaintiff to the extent that the right which was asserted by the original plaintiff is not inherited by the heirs; that the action does abate. However, as shown by the court in McConnell v. Webb, supra, a new right of the survivors comes into existence and may be exercised by them. Having found then that the original action had abated and that only the administratrix had attempted to make herself a party, the Supreme Court dismissed the appeal. Here there are survivors who have appeared and have asked to continue the action, and we think that because of the provisions of our codal article, they have that right, provided they can show that they are the survivors."
In the case of Ramsey v. McDaniel, 1956, 84 So.2d 276, 278, the Second Circuit Court of Appeal reached the same conclusion, holding as follows:
"Prior to the 1954 amendment, LSA-R.S. 13:3349 and Code of Practice art. 21 included language that `There are no exceptions to the rule that an action does not abate by the death of one of the parties thereto after issue joined * * *.' (Emphasis supplied.) We think it was not the intention of the Supreme Court in McConnell v. Webb to annul the plain provisions of LSA-C.C. art. 2315 which expressly provide for survival of a tort action in favor of a widow and children and others therein expressly named. The cited case merely holds that a tort action does not survive in favor of the administratrix of the succession. Accordingly, the motion to dismiss the appeal is denied."
In the recent case of Mahfouz v. United Brotherhood of Carpenters, etc., 1960, 117 So.2d 295, 297, the Second Circuit Court of Appeal again reached the same conclusion, holding as follows:
"The exception of no cause or right of action has for its basis the contention that a personal, nonheritable action for damages in tort abates with the death of the party who instituted it. Since this is a peremptory exception we ascertain no doubt as to plaintiff's right to present it to and have it passed upon at this stage of the proceeding. We have concluded, however, that the exception is without merit. LSA-C.C. Art. 2315, Code Practice Art. 21 as amended by Acts of 1954, No. 57. The latter act declares:
"`An action does not abate on death of one of the parties after suit has been filed, and the heirs, legatees, administrator, or executor of the deceased party may be substituted as parties in any case wherein they succeed, by operation of law, to the rights of the deceased party.'
"LSA-R.S. 13:3349, as amended by Acts of 1954, No. 59, has a similar provision, reading:
"`There are no exceptions to the rule that an action does not abate by the death of one of the parties thereto after suit has been filed. This action shall apply to all actions now pending as well as those which may be hereafter instituted. No act of the legislature heretofore passed, nor any acts hereafter passed shall be construed as making an exception to this rule, unless such act specifically and specially makes an exception thereto.'"
We, therefore, find that two of our Courts of Appeal have held in recent cases that the personal right of action in pending tort suits survives in favor of those persons named in Article 2315 of the LSA-Civil Code, where the plaintiff dies during the pendency of the proceedings but before final judgment has been rendered in his favor. In our opinion, our brothers of the *19 Orleans and Second Circuit Courts of Appeal are correct. We, therefore, hold that the District Court was in error in allowing G. E. Estes, Jr., the executor of the estate of John Stanley Dumas, to be substituted as a party plaintiff in these proceedings. We further hold that the District Court was in error in denying the motion of the surviving widow, Mrs. Alice Peters Dumas, to be substituted as party plaintiff, and we conclude that she is the only proper party plaintiff in these proceedings. The major daughter, Miss Annie Leola Dumas, clearly cannot be substituted where there is a surviving spouse under the provisions of LSA-C.C. Article 2315.
Defendant contends that the contributory negligence of Mrs. Alice Peters Dumas bars her recovery. The only case cited by defendant is Kientz v. Charles Dennery, Inc., La.App., 17 So.2d 506, in which a wife was injured through her husband's negligence. The Court rejected the claim of Mrs. Heintz for loss of earnings because those earnings formed part of the community of acquets and gains and the claim for them should have been made by the husband as head and master of the community. He could not make the claim because his own contributory negligence barred his recovery.
As counsel for the plaintiff points out, the "survival action" of Article 2315, and the "wrongful death action" created by the same Article, are two separate and distinct causes of action. The former is a prosecution by a certain designated party of the cause of action which the decedent himself might have brought and prosecuted to a conclusion had he not died. It contemplates recovery only of such damages as the decedent himself might have been entitled to recover. The "wrongful death action", on the other hand, is an action belonging exclusively to certain members of the decedent's family and it contemplates recovery of none of the damages which the decedent might have recovered. The loss in the "wrongful death action" is that of the survivor for grief, loss of support, etc. This is made clear in the line of cases holding that a settlement with a decedent made prior to his death does not deprive his survivors of their "wrongful death action" after he dies from injuries received in the same accident. Dougherty v. New Orleans Railway & Light Company, 1913, 133 La. 993, 63 So. 493, and succeeding cases.
This is the action of John Stanley Dumas to recover damages for suffering, disability, medical expenses and loss of earnings. The case stands or falls on his entitlement to damages and not on the entitlement of the substituted party plaintiff.
The contributory negligence of a survivor under a Wisconsin "survival statute" has been held not to bar recovery under the same theory that the survival action stands or falls on the decedent's right to recover, not on the survivor's. In Potter v. Potter, 1937, 224 Wis. 251, 272 N.W. 34, 37, the Court said:
"If the injury had been sued upon by the mother and a judgment entered and paid during her lifetime, it could hardly be contended after her death that the negligent tort-feasor was disqualified to share her estate as heir or legatee, and the same principle operates where death precedes suit upon the cause of action."
We, therefore, are of the opinion that although Mrs. Dumas was guilty of contributory negligence proximately causing the accident, she is not thereby barred from recovery as a substituted party plaintiff in these proceedings.
On appeal the defendant contends that the damages awarded in the lower court are excessive and the plaintiff has answered the appeal asking an increase.
At the time of the accident on December 15, 1956, Mr. Dumas was 62 years of age and for some time had suffered from diabetes and a cardiac condition. *20 He was of obese stature and undoubtedly the poor condition of his general health impeded his recovery from the injuries received. In the collision Mr. Dumas was thrown out of the back seat of the car onto the pavement. His left ankle was severely fractured and dislocated but the bones did not penetrate through the skin. In addition, he received a sprained left wrist and bruises and contusions to his left shoulder. He was taken by ambulance to the hospital where a general anesthetic was given and the fracture was reduced and a cast as far as the knee was applied. He remained in the hospital for 26 days, until January 10, 1957, but then continued under treatment as an office patient. When the cast was removed on February 21, 1957, Dr. Davis found in back of the ankle joint a small area of necrotic skin caused by lack of blood circulation. Although Dr. Davis did not think this was causing plaintiff much pain, he did think it necessary to place plaintiff in the hospital on February 22, 1957, where plaintiff again underwent surgery and remained for a period of approximately 16 days for treatment of the necrotic area.
By May 9, 1957, the left foot still showed evidence of swelling but Mr. Dumas had fair motion in the ankle and foot and the necrosis was diminishing. On June 14, 1957, approximately six months after the accident, Dr. Davis for the first time allowed Mr. Dumas to bear weight on his left leg. By July 1, 1957, Mr. Dumas was walking well with the aid of crutches, but still had some swelling and some pain. All during this time plaintiff's left shoulder and left wrist had also caused him pain and discomfort. Atrophy was apparent in the left arm, which clearly indicated lack of use of the muscles due to pain.
By January 28, 1958, Dr. Davis found that full motion could be obtained without pain in the foot. Atrophy of the leg had disappeared, but the doctor wanted to continue to see Mr. Dumas because he found evidence of aseptic necrosis and there is a danger of this appearing as long as three years after an injury. The left wrist and shoulder were still giving slight trouble but had greatly improved.
However, in about April of 1958, Mr. Dumas again began to have pain in his leg and arm. Arthritis was present in the leg, wrist and left ankle and this was characterized as traumatic in origin by both Drs. Davis and Friedman. In July of 1958, a leg brace was prescribed. Up until the date of his death, some three years after the accident, Mr. Dumas continued to suffer from some pain and disability as a result of this accident.
The District Court awarded $7,500 "for physical and mental pain and suffering, disability and related general damages". Under the circumstances of this case, it is our opinion that the award of $7,500 for general damages does substantial justice and is in accord with the awards in such cases as Plaisance v. Pellerin, La.App., 102 So.2d 499; Meade v. Cutrer, La.App., 100 So.2d 299; Mershon v. Cutrer, La. App., 100 So.2d 295, and Smith v. Manufacturers Casualty Insurance Company, La. App., 83 So.2d 164.
For loss of earnings the lower court awarded $100 per week for 33½ weeks, or a total of $3,350. The evidence amply supports the factual finding of the District Court that Mr. Dumas earned approximately $100 per week and that his loss of salary started about January 1, 1957, and extended through August of 1958. We find no manifest error in this factual finding by the District Judge.
The trial judge found that Mr. Dumas had established medical expenses amounting to $2,146.99, and rendered judgment on this item for that amount. The policy sued upon provided for medical payments up to $2,000 for each person who suffered injury in the insured automobile. During the trial it was stipulated and agreed that defendant had, prior to trial, paid out the full amount of $2,000 toward the medical expenses of Mr. Dumas. The *21 defendant contends that the trial court erroneously refused to give the defendant credit for the $2,000 previously paid, thus allowing the recovery of the medical expenses twice. Defendant argues that the recovery for medical expenses should be limited to the sum of $146.99.
This point has been passed upon twice by our Louisiana Appellate Courts. In Hawayek v. Simmons, 1956, 91 So.2d 49, 56, 61 A.L.R.2d 1254, the Orleans Court of Appeal held, as follows:
"But we do not believe that plaintiff is entitled to recover both under the medical payments clauses and the liability clauses for medical expenses incurred in one and the same accident. It would be inequitable to construe the policy contract so as to allow the plaintiff to collect double the amount of his damage. It strikes us that a reasonable interpretation of the policy clauses would be that plaintiff had the choice of either claiming the amount of the medical expenses under the medical clauses or the liability clauses of the policy, but certainly not under both."
In the case of Distefano v. Delta Fire & Casualty Company, 1957, 98 So.2d 310, 313, the First Circuit Court of Appeal reached a contrary conclusion, holding, as follows:
"A claim based on the liability feature of the policy is a tort claim; a claim based on the medical payments feature of the policy is a claim sounding in contract.
"If Delta had two separate policies, one granting liability coverage and one granting Medical Payments Coverage, that would be no different than the situation as it presently exists where both coverages are furnished under the same policy."
In our opinion, the reasoning in the Distefano case is more legally sound than that in the Hawayek case, and we, therefore, find that defendant is not entitled to a credit of $2,000 for the amount which it paid under the medical payments clause.
For the above and foregoing reasons, the judgment below is amended so as to hold that Mrs. Alice Peters Dumas, as surviving widow of the deceased plaintiff, John Stanley Dumas, be substituted as the only proper party plaintiff in these proceedings. The ruling of the District Court substituting the executor as the party plaintiff is annulled and set aside. The judgment as amended is affirmed in all other respects. Costs of this appeal are assessed against the defendant.
Amended and affirmed.
Rehearing denied; HOOD, J., dissenting.