REGAN, Judge.
The plaintiff, Veo Brumfield, filed this suit against the defendants, Jack Fisher, his insuror, Liberty Mutual Insurance Company, Joseph B. Charles,[1] Edward C. Longacre, and his insuror, Allstate Insurance Company, endeavoring to recover the sum of $41,909.84 representing both personal and property damage which he asserts were caused by the fault of the defendants in the operation of their respective automobiles. Subsequently, the plaintiff impleaded Henry L. Tilly predicated upon the hypothesis that he was Charles’ principal or employer.
The respective defendants answered and denied the accusations of negligence delineated in the plaintiff’s petition. They then filed innumerable cross and counter claims which are not material to this opinion and in effect have only served the purpose of unnecessarily complicating the case.
The lower court rendered judgment in favor of the plaintiff and against Joseph *147 B. Charles, Edward C. Longacre and Allstate Insurance Company solidarily in the sum of $7,056.84, and it dismissed the plaintiff’s suit against all other defendants. From that judgment, the plaintiff and the defendants, Longacre and Allstate Insurance Company, have prosecuted this appeal.
The record discloses that on January 4, 1968, at approximately 8:45 A.M., the plaintiff was driving his automobile in a westerly direction or away from Canal Street in South Claiborne Avenue. He was proceeding up the incline of the South Claiborne overpass when he was forced to stop due to the congestion of traffic in front of him. The second vehicle being operated by the defendant, Fisher, came to a stop behind the plaintiff’s car and that after doing so, the Fisher vehicle was rear ended by a truck, the third vehicle, which was being driven by the defendant, Charles. Thereafter, the plaintiff contends that there was a second impact from the rear which he asserts occurred as the result of a fourth automobile being driven by the defendant, Longacre, striking Charles’ truck, which in turn pushed the Fisher vehicle into the rear of the plaintiff’s automobile for the second time.
All of the litigants conceded in the course of oral argument before this court that the Fisher vehicle had come to a safe and complete stop behind the plaintiff’s vehicle, so that he was not at fault in causing the accident. The litigants also conceded that the defendant, Tilly, was not vicariously liable for Charles as either his principal or employer.
The evidence adduced herein convinces us that Charles rear ended the Fisher vehicle which caused it to rear end the plaintiff’s automobile, therefore the initial question posed for our consideration is one of fact, and that is whether Longacre’s collision with the Charles vehicle caused the Fisher automobile to have a second collision with the rear of the plaintiff’s vehicle thereby making Longacre and his insurer solidarily liable to the plaintiff.
Longacre contends that while he collided with the rear of the Charles vehicle, this impact did not cause a second chain reaction resulting in another impact with the plaintiff’s vehicle. In support of this contention, he points to the nebulous testimony of Fisher, the driver of the vehicle immediately behind the plaintiff. Our analysis of Fisher’s testimony convinces us that while he was positive that he was struck twice from the rear, he was not sure whether he struck the rear of the plaintiff’s vehicle the second time. This testimony appears to be, in a sense, self-serving since at the time of the trial it had not been conceded that Fisher was free of negligence. Moreover, the severity of the impact of the Longacre vehicle with the rear of the Charles vehicle, together with the plaintiff’s testimony that he was struck from the rear more than once, provides ample support for the lower court’s finding that as a matter of fact the Longacre vehicle caused the second rear end collision with the plaintiff’s vehicle. The whole tenor of the record leads us to the inevitable conclusion that the lower court did not commit any error in reaching the foregoing conclusion.
The defendant also insists that the lower court erred in qualifying the investigating police officer as an expert in the field of accident investigation and awarding him an expert witness fee. The testimony of this officer revealed that he had worked with a more experienced police officer for a period of approximately eight weeks, and that he had been on the police force only three and one-half months when this accident occurred. The officer candidly admitted that he had received no special training and had undertaken no special study in the field of accident investigation, and that he was unfamiliar with what effect road conditions or surfaces would have on stopping or braking distances of an automobile. In view of these facts, the officer was not a qualified expert, and he is therefore not entitled to an expert witness fee.
*148 Defendant also insists that certain items of special damages should not have been allowed by the trial court. The evidence adduced in the lower court revealed that after the accident, the plaintiff was passing blood rectally and that this condition was later diagnosed as duodenitis. Dr. William Fisher, the plaintiff’s treating physician, testified that any connection between the accident and the duodenitis was problematic and speculative. Moreover, Dr. Neal and Doctors Harris and Fried-rich, who participated respectively as radiologist and pathologists, in the treatment of this condition, were not called as witnesses to testify in connection with this condition. Therefore, we may presume that if they had spoken they would have concluded that the duodenitis was not traumatically caused. Consequently, Dr. Neal’s bill to the extent of $30.00 and the bill of Doctors Harris and Friedrichs to the extent of $8.00, were improperly awarded to the plaintiff.
With respect to the bill of Dr. Byron UnKauf of $147.00, the lower court, in its reasons for judgment, stated that it could not “bridge the gap” from April 16, 1968, when the plaintiff was relatively asymptomatic, to the end of the year when he saw Dr. UnKauf. Despite the foregoing rationalization, the trial judge awarded the above amount and we are convinced that in this respect he erred.
Finally, the defendant takes exception to a bill in the amount of $34.60 incurred for shoes prescribed by Dr. Fisher to correct a congenital condition described by the physician as a “pelvic tilt”. The medical testimony disclosed that the plaintiff was suffering from lower back pain as the result of the accident, and by correcting the pelvic tilt with the orthopedic shoe, the strain on the plaintiff’s back was somewhat relieved and his condition then began to be aleviated. Under these circumstances, there was, in our opinion, a causal connection between the accident and the need for the orthopedic shoe, despite the fact that the immediate result of prescribing the shoe was to correct a pre-ex-isting orthopedic condition.
In response to a subpoena duces tecum to produce his income tax returns, the plaintiff presented only W-2 forms. His excuse was that he was “tax exempt” because he had seven children. His counsel explained this statement by pointing out that the plaintiff had not earned sufficient wages to cause him to incur federal tax liability. In any event, he testified that he had been constantly employed through his union, that he was working on an average of 45 to 50 hours per week. In support of this testimony, he called as a witness the assistant business manager of his local union; however, this official was unable to confirm the plaintiff’s testimony with respect to the amount of work missed by him as the result of this accident.
Hence, we are relegated to the W-2 forms produced by the plaintiff for 1967, which disclosed that he earned $3,012.32 during that calendar year. Since the plaintiff lost three months work as the result of the accident, from January 4, 1968, to April 5, 1968, the most which he has proved as lost wages was the sum of $753.-08, or one quarter of his previous year’s earnings. Hence, the lower court’s award of $1,753.76 must be reduced by the sum of $1,000.68.
Finally, the defendant argues that the award of $4,000.00 made by the lower court for the plaintiff’s personal injuries was excessive. His injuries consisted primarily of a flexion-extension injury of the cervical area together with a low back sprain. He was treated from January 4, 1968, until April 5, 1968, when he was instructed to return to work by Dr. Fisher. He was examined on April 9 and April 15, 1968, at which time he was completely asymptomatic. Dr. Fisher explained that his complaints begain to subside about one month after the accident, and continual improvement was characteristic of his course of treatment from that point until his dis *149 charge. The plaintiff had subjective complaints of pain at the time of trial, but the defendant’s expert witness testified convincingly that there was no medical basis for these complaints.
Under the circumstances, it is evident that the plaintiff incurred an injury to his back which caused him rather severe discomfort for a period of three months. In conformity with the rationalization emanating from the case of Gaspard v. LeMaire[2] and its legitimate progeny, the appellate courts are constrained not to disturb an award of damages of a district judge unless it is evident from the record that there was an abuse of the broad discretion inherent in the trial court. In order to make a determination of whether the trial court did in fact abuse its discretion, other awards for damages for personal injuries in similar cases should be considered.[3] In Olds v. Ashley[4] the Supreme Court awarded the sum of $1,800.00 to an injured litigant who had sustained a “whip lash” type injury, and who was treated therefor for a period of approximately eight months. In Alexander v. Fidelity-Phoenix Insurance Company,[5] this court awarded the sum of $1,500.00 to a plaintiff who incurred bruises, contusions, and a neck injury which persisted for a period between two and three months. Finally, in Covey v. Marquette Casualty Company[6] this court also awarded $2,000.-00 to a plaintiff who sustained a lumbo-sac-ral sprain and multiple contusions, which required two periods of hospitalization for three and five days respectively. In addition, the plaintiff in the Covey case disclosed a record of sixty-five visits to his doctor over a ten month period.
Evaluating these cases and the facts disclosed by the record as opposed to the award of the trial judge, it is evident that the court abused the discretion granted to it in awarding the plaintiff the excessive sum of $4,000.00 for the injuries which he sustained. We are convinced that an award of $2,000.00 would more, adequately compensate the plaintiff for the injuries which he incurred.
For the foregoing reasons, the judgment of the lower court is amended by reducing the amount awarded to the plaintiff of $7,056.84 to the sum of $3,871.16 and by eliminating the award of $50.00 as an expert fee to the investigating police officer. As thus amended, the judgment of the lower court is in all other respects affirmed.
The defendants are to pay all costs in the lower court. The plaintiff is to pay all costs of this appeal.
Amended and affirmed.

. Charles was uninsured.

. 245 La. 239, 158 So.2d 149 (1963).

. See Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964).

. 250 La. 935, 200 So.2d 1 (1967).

. 185 So.2c) 102 (1966).

. 84 So.2d 217 (1955).