G. Stephen COVERT, et al.

v.

LIGGETT GROUP, INC., et al.

Civ. A. No. 87–131–B.

United States District Court,
M.D. Louisiana.

Nov. 8, 1990.

**1304**

George R. Covert and Charles Braud, Covert & Braud, Baton Rouge, La., Don Lawrence Davis, Byrd, Davis & Eisenberg, Austin, Tex., for plaintiffs.

Thomas M. Nosewicz, John J. Weigel, New Orleans, La., for Liggett Group, Inc.

K. Eric Gisleson, New Orleans, La., for the Tobacco Institute, Inc.

Henry B. Alsobrook, Jr., Charles F. Gay, Adams & Reese, New Orleans, La., Gary R. Long, Gary B. Brewer, Kansas City, Mo., pro hac vice, for Philip Morris, Inc.

Harry McCall, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Brown and Williamson Tobacco Corp.

John M. McCollam, Ewell E. Eagan, Jr., Steven W. Copley, Ernest E. Svenson, Gordon, Arata, McCollam & Duplantis, New Orleans, La., for Lorillard, Inc.

POLOZOLA, District Judge:

This case is before the Court to examine articles of the Louisiana Civil Code and its source provisions to determine whether an injured party may lawfully assign or donate a personal injury claim to another party or whether such an assignment or donation is null and void. The Court must further determine whether the injured party may be substituted as the real party in interest under Rule 17 of the Federal Rules of Civil Procedure if the assignment of the claim was null and void.

## I. Factual Background

Jane H. Covert had smoked cigarettes for almost forty years when she discovered that she had lung cancer in March of 1986. While Mrs. Covert believed she might have a cause of action against various cigarette manufacturers, she did not wish to become a party to the lawsuit. Therefore, she executed an act which purported to donate any cause of action she might have to her three children and to Stop Teenage Addiction to Tobacco (STAT), a nonprofit organization. This donation occurred prior to the time the lawsuit was filed. Thereafter, the donees filed suit against Liggett Group, Inc., Philip Morris, Inc., Brown and Williamson Tobacco Corp., Lorillard, Inc., and the Tobacco Institute, Inc. seeking to recover damages for the injuries Jane H. Covert sustained.[1]

Defendants then moved for summary judgment on the ground that since Mrs. Covert's donation was absolutely null and void, the plaintiffs lacked standing to sue. Plaintiffs subsequently redonated their claims back to Mrs. Covert and filed a motion for leave to amend their complaint in order to substitute Mrs. Covert as the sole plaintiff in the suit. While both motions were pending, Mrs. Covert died. Mrs. Covert's heirs have since filed a separate wrongful death action.

For reasons which follow, this Court finds:

1. A victim's right to recover for personal injuries is nonassignable. Therefore, Mrs. Covert's donation was absolutely null and void.

2. This is an action to enforce Mrs. Covert's right to recover damages under Article 2315 of the Louisiana Civil Code. The original plaintiffs, who never have possessed such right under Article 2315, were not real parties in interest to this action.

3. Rule 17(a) of the Federal Rules of Civil Procedure permits the original plaintiffs to substitute Mrs. Covert, the real party in interest, as plaintiff in this action.

4. This Court, in the exercise of its discretion and in the interest of justice, hereby

---

1. It is important to note that the plaintiffs seek to recover damages which Jane H. Covert sustained. They are not seeking to recover damages in the original suit that they as individuals may have sustained. See *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559 (La.1990).

grants the plaintiffs' motion to amend to substitute Mrs. Covert as the plaintiff.

5. Since Mrs. Covert was, before her death, the real party in interest, defendants' motion for summary judgment is denied as moot.

6. Since Mrs. Covert was the plaintiff in this action at the time of her death, the action did not abate upon her death. The heirs listed in Article 2315.1 of the Louisiana Civil Code have a right to substitute themselves as plaintiffs.

## II. Legal Analysis of the Donation

### A. *Definitions*

To fully understand the very technical issue involved in this case, the Court believes it is necessary to define certain legal terms to be used in this opinion. A proper resolution of the issues presented herein requires a clear distinction among the following terms:

a.  An **obligation** is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something.[2]

b.  A **right** is correlative to an obligation. It is simply the obligation viewed from the perspective of the obligee (i.e., an obligor owes an obligation; an obligee holds a right). Rights are divided into real rights (those that confer authority over a thing) and personal rights (those that confer authority over a person). Personal rights are further subdivid-

ed into heritable rights and strictly personal rights.[3]

c.  A **right of action** is an attribute of some, but not all,[4] rights. It is the ability of the obligee to bring an action to enforce his right.

d.  An **action** is a demand for the enforcement of a legal right.[5] An action is an incorporeal thing, as is a right, and it may be possessed just as any other thing.[6]

e.  A **heritable right** is a right which the obligee may transfer to another person.[7]

f.  A **strictly personal right** is a right which the obligee may not transfer. When the obligee dies, the right dies with him.[8]

### B. *The Validity of Mrs. Covert's Donation*

Mrs. Covert attempted to assign her right to recover damages for her personal injuries under Article 2315 of the Louisiana Civil Code (hereinafter personal injury right).[9] The issue of whether Mrs. Covert could lawfully assign that right depends on whether a personal injury right is properly classified as heritable or as strictly personal. Unfortunately, Article 2315 does not expressly answer that question. Therefore, it is necessary for this Court to analyze the article's history to discern the legislature's intent.

Under both Roman and Spanish law, rights to recover for injuries to property were heritable,[10] whereas personal injury

---

2.  La.Civ.Code art. 1756.

3.  La.Civ.Code art. 1763, comment (b).

4.  A natural obligation gives rise to a right, but not to a right of action. La.Civ.Code arts. 1760–1761.

5.  La.Code Civ.P. art. 421.

6.  La.Civ.Code art. 473.

7.  La.Civ.Code art. 1765.

8.  La.Civ.Code art. 1766.

9.  La.Civ.Code art. 2315 provides:

Every act whatever of man that causes damage to another obliges him by whose fault is happened to repair it.

Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.

10.  **Roman law:** "[A]n heir can bring the action for theft; for in the case of several delicts, heirs are allowed to prosecute claims; thus, an heir can bring an action under the *lex Aquilia.*" Dig. 47.1.1 (Ulpian, Sabinus book 41).

**Spanish law:** "The owner of the property which is damaged can demand reparation for the same. His heir can also do this...." Las Siete Partidas 7.15.2.

rights were strictly personal.[11]  However, after *litis contestatio* (the point at which both petition and answer have been filed), even personal injury actions were heritable [12] in most cases.[13]

■ Spanish law was in force in Louisiana in 1806 when the Louisiana Legislature directed James Brown and Louis Moreau–Lislet to prepare what would become the Digest of 1808.[14]  The legislature specified that the compilation was to be based upon the law which was then governing the territory.  The Digest and the residual Spanish law continued in effect until the legislature adopted the Civil Code of 1825.[15]  The Code, while borrowing many provisions of the Code Napoleon verbatim, also included many provisions of Spanish law.[16]  When the legislature adopted the predecessor article to Article 2315,[17] they impliedly adopted the Spanish rule that personal injury rights are strictly personal.[18]

The Louisiana courts, beginning with the Louisiana Supreme Court in *Hubgh v. New Orleans & Carrollton Railroad Co.*, have consistently held that personal injury rights are strictly personal.[19]  This Court

---

11. **Roman law:** "But the action for insult does not lie to heirs."  Dig. 47.1.1 (Ulpian, Sabinus book 41).

   **Spanish law:** "No man has authority to demand reparation for dishonor or wrong inflicted upon the party whose heir he is, during the lifetime of the latter; except where the deceased has already, before he died, brought suit, and issue has been joined by answer....; but if he did not begin the suit in his lifetime, ... his heirs cannot afterwards do so, for the reason that claims of this kind, in which vengeance accompanies the penalty, do not vest in heirs, unless suit was brought for them by the party from whom they inherited...."  Las Siete Partidas 7.9.23.

12. **Roman law:** "The action for insult is granted neither to nor against heirs....  But once issue has been joined, the action can be continued by successors."  Dig. 47.10.13 pr. (Ulpian, Edict, book 57).  "[I]f the penal actions ... are once contested by the principal parties concerned, they will afterwards pass both to, and against the heirs of such parties."

   **Spanish law:** *See supra* note 11.  *See also* Comment, *Abatement of Actions in Louisiana*, 15 La.L.Rev. 722, 723–25 (1955).

13. It must be noted that some commentators argue that, under Roman law, a strictly personal right did not simply *become* heritable after *litis contestatio*.  Instead, the right was extinguished and replaced by a new right in anticipation of judgment.  *See, e.g.,* Oppenheim, *The Survival of Tort Actions and the Action for Wrongful Death—A Survey and a Proposal*, 16 Tul. L.Rev. 386, 403 (1942) ("If *litis contestatio* had already been reached, a procedural novation was accomplished.  An inchoate claim was created, which needed only the determination of a fact to become an obligation."); Comment, *Heritability of Conventional Obligations*, 31 Tul. L.Rev. 324, 335 (1957) ("At Roman law, the *litis contestatio* brought about a novation of the obligation sued upon, and the heritability of the new obligation embodied in the judicial proceedings was determined independently of the heritability of the obligation that formed the basis for the action.").

14. Pascal, *Sources of the Digest of 1808: A Reply to Professor Batiza*, 46 Tul.L.Rev. 603, 605 (1972).

15. *See* Louisiana Civil Code, XXIII–XXIX (A. Yiannopoulos ed. 1990).

16. *See, e.g.,* Pascal, *supra* note 14.

17. La.Civ.Code art. 2294 (1825): "Every act whatever of man, that causes damage to another, obliges him, by whose fault it happened, to repair it."  Article 2294 was identical to Article 1382 of the Code Napoleon.

18. It must be especially noted that the Civil Code of 1825's provisions for strictly personal obligations (Article 1997, *et seq.*) had no predecessors in the Code Napoleon.

19. 6 La.Ann. 495, 496 (La. 1851) ("It is urged that, under the civil law, the present action can be maintained.  But the plaintiff's counsel have not favored us with any authority from Roman or Spanish law sustaining the position they assume.  On the contrary, it is a general rule under those systems, that actions for personal injuries are strictly personal."); *Chivers v. Roger*, 50 La.Ann. 57, 23 So. 100, 102 (1898) ("[U]nder the well-settled jurisprudence of this court, and the cited provisions of the Civil Code and its amendment, and action for the recovery of damages for personal injuries sustained is a purely personal one, and does not survive the death of the beneficiary...."); *Vaughan v. Dalton–Lard Lumber Co.*, 119 La. 61, 43 So. 926, 927 (1907) ("It is too well settled for dispute that actions for damages for personal injuries did not survive under the Civil Code of 1825, but died with the person injured...."); *Irion v. Knapp*, 132 La. 60, 60 So. 719, 720 (1913) ("[W]e have found that action for 'slander' and the like are not 'usually considered assignable.' "); *Kerner v. Trans–Mississippi Terminal R. Co.*, 158 La. 853, 104 So. 740, 741 (1925) ("A right of action for damages for personal injuries is not inheritable under the common law, and was not under the civil law."); *Miller v. American Mut.*

believes that this result was true to Louisiana's Roman/Spanish heritage. However, Louisiana courts also held that personal injury *actions* were strictly personal even after *litis contestatio* despite the civil law tradition to the contrary and despite the Code of Practice [20] provision that *no* actions abate upon the death of a party.[21] Commentators severely criticized this result,[22] and the Louisiana State Law Institute proposed the adoption of amendments which would make it clear that instituted personal injury actions do not abate upon the death of the victim.[23] The legislature rejected the pertinent amendatory language, enacting instead a truncated version which provided: "An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly personal." [24] Thus, the legislature adopted the jurisprudential rule that actions to enforce strictly personal rights are abated on the death of the obligee. Personal injury *actions* fall into this exception to nonabatement if personal injury *rights* are strictly personal.

*Liab. Ins. Co.,* 42 So.2d 328, 330 (La.App. 1st Cir.1949) ("[B]oth at common law and at civil law a right of action for damages for personal injuries does not survive in case of death."); *Young v. McCullium,* 74 So.2d 339, 340–41 (La. App. 1st Cir.1954) (quoting *Kerner, supra*); *Maher v. Schlosser,* 144 So.2d 706, 708 (La.App. 4th Cir.1962) ("A right of action for damages for personal injuries is not heritable under the common law and was not under the civil law...."); *Hickman v. Parish of East Baton Rouge,* 314 So.2d 486, 487 (La.App. 1st Cir.), *writ denied,* 318 So.2d 59 (La.1975) ("The cause of action is accorded only to the victim of the offense during his life, is personal to him and is not shared by any other person....").

The Civil Code equates heritability with assignability, so that a right which is not heritable likewise is not assignable. La.Civ.Code art. 1765 comment (b).

It must be noted that the cases cited above tend to use the terms "action" and "right of action" when referring to the victim's right to recover. As was previously noted, there is a difference in the meaning of these two terms. *See supra* text accompanying notes 2–8.

**20.** La.Code of Practice art. 21 (1870) (repealed).

**21.** *See, e.g., Kerner,* 104 So. at 741 ("Unless a statute declares that such [a personal injury] right of action shall survive in case of the death of the person injured, it is abated by his death, whether he dies as a result of the injury or from some other cause, and whether he has or has not instituted a suit to recover the damages suffered."); *Miller,* 42 So.2d at 330 (The personal injury right "died with the death of the injured party, whether suit was filed or not."); *Young,* 74 So.2d at 341 (quoting *Kerner, supra*); *McConnell v. Webb,* 226 La. 385, 76 So.2d 405, 407 (1954) ("The common law rule to the effect that a personal action for damages for a tort expires at the death of the party who instituted it as adopted in the jurisprudence of this court many years ago and is still adhered to."); *Maher,* 144 So.2d at 708 ("A right of action for damages for personal injuries ... is abated at [the victim's] death whether he dies as a result of the injury or from some other cause and

whether he has or has not instituted a suit to recover the damages suffered.... [A] personal, nonheritable right of action or an action already commenced for damages in tort does abate with the death of the party who instituted it which constitutes an exception to the nonabatement statutes which has existed for many years.").

**22.** *See, e.g.,* Comment, *supra* note 12.

**23.** The article proposed by the Louisiana State Law Institute read as follows:

An action does not abate on the death of a party. The only exceptions to this rule are actions to enforce rights and obligations which are strictly personal, and exceptions provided expressly, or by necessary implication, by statute adopted hereafter.

When an action is brought under Article 2315 of the Civil Code by the injured party, upon his death it survives in favor of a survivor designated therein, if there be one, and the latter may be substituted as party plaintiff. Otherwise, when a party to an action dies his heirs, legatees, administrator, or executor, as the case may be, may be substituted as parties.

**24.** La.Code Civ.P. art. 428. Note that Article 428 sets up a general principle of nonabatement, excepting actions to enforce strictly personal rights. Personal injury rights had always been considered strictly personal, so actions to enforce them fell within the exception. The Law Institute's proposal, *supra* note 23, sought to remove personal injury actions from the exception by virtue of the second paragraph. The legislature rejected the proposed second paragraph.

Furthermore, the comments to the adopted article indicate that the legislature intended to overturn several lines of jurisprudence. However, the comments say nothing about overturning the *McConnell v. Webb* rule that personal injury actions are strictly personal. *See supra* note 21. This Court concludes that the legislature intended that personal injury remains strictly personal.

The Court must now determine whether the legislature has done anything to change Louisiana's long-standing rule that personal injury rights are strictly personal.

■ It is clear that Article 2315.1 of the Louisiana Civil Code provides a right to recover to the survivor of a tort victim: "If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased in favor of [certain specified beneficiaries].... The right of action granted under this Article is heritable...."[25] In 1960, the legislature made this survivor's right (including that derived

from the victim's personal injury right) heritable. As a result, some commentators contend that the legislature also intended to make the *victim's* personal injury right heritable.[26] This Court disagrees.

■ In the case of a heritable victim's right (e.g., a property damage right), Article 2315.1 operates to *transfer* the victim's right to a designated beneficiary. Thus, the beneficiary's right is the same right that the victim held. In the case of a strictly personal victim's right (e.g., a personal injury right), Article 2315.1 operates to *novate* the victim's right, extinguishing it and vesting a new right in the beneficiary.[27] The survivor's right and the victim's right, while in many ways alike, are in fact two different rights.[28]

25. The complete text of La.Civ.Code art. 2315.1 reads:
   A. If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased in favor of:
   (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children;
   (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
   (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
   B. In addition, the right to recover all damages for injury to the decedent, his property or otherwise, caused by the offense or quasi offense, may be urged by the decedent's succession representative in the absence of any class of beneficiary set out in the preceding Paragraph.
   C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
   D. As used in this Article, the words "child," "brother," "sister," "father," and "mother" include a child, brother, sister, father, and mother, by adoption, respectively.

26. *See e.g.,* Johnson, *Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions,* 37 La.L.Rev. 1, 52 n. 252 (1976) ("La.Civ.Code art. 2315 clearly provides that the victim's right to recover damages to his property is heritable rather than strictly personal, and that the beneficiary's right to recover damages is heritable rather than strictly personal. It would be passing strange to characterize the victim's right to recover damages for person-

al injuries as strictly personal in the absence of a specific provision to that effect.")

27. The survivor's right essentially substitutes a new obligee (the survivor) in place of the original one (the victim). As such, the death of the victim results in a subjective novation. *See* La. Civ.Code arts. 1879–1887. "Novation takes place when a new obligation is substituted for an old one, which is thus extinguished. Such a substitution occurs whenever at least one of the basis elements of the original obligation is changed. The basic elements of an obligation are the parties to it, its object, and its cause." La.Civ.Code art. 1881 comment (c). Whereas La.Civ.Code art. 1882 does not explicitly provide for novation by substitution of the obligee (see comment (d): "[T]he general acceptance of the notion of transmissibility of obligations has made novation by substitution of an obligee obsolete."), presumably a strictly personal right (which is nontransmissible by definition) is novated by substitution of the obligee.

28. *See, e.g.,* Judge Taylor's dissenting opinion in *J. Wilton Jones Co. v. Liberty Mut. Ins. Co.,* 248 So.2d 878, 898–99 (La.App. 4th Cir.1970), *writ denied,* 259 La. 61, 249 So.2d 202 (1971) (Taylor, J., dissenting) ("[T]he legislature adopted paragraph three of LSA–C.C. art. 2315 [the survivor's action] to deal with the right to recover damages for personal injury suffered by the deceased. The effect of paragraph three [the survivor's action] is not to make the deceased's right to recover such damages heritable. To the contrary, the deceased's right to action still dies with him. However, ... if the deceased's right had not prescribed prior to his death, there arises for the first time, at the moment of the death of the injured party, a *new* right of action which accrues in favor of one of the specific classes of people in the order enumerated in the

Both the victim's right [29] and the survivor's right [30] had consistently been held to be strictly personal prior to 1960. In the 1960 amendments, the legislature specified that the victim's property damage right and the survivor's right were heritable. However, the legislature notably *did not* specify that the victim's personal injury right be heritable.[31] Of even greater significance is the article's second paragraph, which states: "The right to recover damages *to property* caused by an offense or quasi offense is a property right [i.e. heritable]...."[32] If the legislature had intended to make personal injury rights heritable, it simply could have left the words "to property" out of the sentence. The inclusion of the words "to property" can only mean that the legislature intended that property damage rights and *not* personal injury rights were heritable. The revision of the pertinent articles since 1960 has constituted no more than a reorganization of the article.[33]

■ Therefore, this Court concludes that, under Louisiana law, a victim's personal injury right is strictly personal. Because it is strictly personal, it may not be donated or assigned. Thus, Mrs. Covert's attempted donation of her personal right is absolutely null.[34]

■ Since Mrs. Covert's donation is null and void,[35] the original named plaintiffs in this suit were never real parties in interest as to the right asserted because that right was Mrs. Covert's personal injury right. Even when Mrs. Covert died, her right did not vest in the plaintiffs. Her right died with her, and a new right vested in some, but not all, of the plaintiffs who are deemed beneficiaries by Article 2315.1.

statute. This new right of action, unlike the deceased's right of action, is a [heritable] right because the statute so provides."); *Maher*, 144 So.2d at 708 ("[A] personal, nonheritable right of action or an action already commenced for damages in tort does abate with the death of the party who instituted it.... Upon the death of the injured party a new right arises in favor of the survivors....").

29. *See supra* note 19.

30. *See, e.g., Chivers v. Roger*, 50 La.Ann. 57, 23 So. 100 (1898).

31. After the 1960 amendment, La.Civ.Code art. 2315 (1870) (as amended by 1960 La. Acts No. 30, § 1; repealed) read as follows:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.

The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.

As used in this article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, respectfully.

32. *Id.* Article 2315 no longer expressly states that a property damage right is heritable. *See supra* note 9. Although the right's heritability may be implied, that issue is not before the Court.

33. *See* La.Civ.Code arts. 2315–2315.2 and La.Civ. Code art. 2315 (1870) (as amended by 1960 La. Acts No. 30, § 1; repealed).

34. *See* La.Civ.Code art. 2030.

35. While not an issue in this case, the Court is concerned about public policy considerations if the victim could assign a personal injury right to others. It is possible and indeed probable that victims could be taken advantage of and deprived of personal injury rights for inadequate sums. The buying and selling of these personal injury rights could lead to persons other than the injured party becoming enriched while parading the injured victim before an unsuspecting jury. The precedent and evidentiary problems are also too numerous to mention.

However, the original plaintiffs' suit interrupted the prescription of Mrs. Covert's personal injury right since it gave to the defendants the requisite notice of the claim.[36]

Having concluded that the donation by Mrs. Covert as null and void, the Court must now consider plaintiffs' motion for leave to amend to substitute Mrs. Covert as the plaintiff.

### III.  Plaintiffs' Motion to Amend

▊ The Federal Rules of Civil Procedure permit a plaintiff who is not a real party in interest to substitute the real party in interest in his stead, even though the original plaintiff presumably has no standing.  Thus, Rule 17(a) provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The comments to Rule 17(a) indicate that substitution is available only to plaintiffs who originally filed the suit in good faith:

> The provision should not be misunderstood or distorted.  It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.  It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have

the benefit of suspension of the limitation period.

The distinction drawn by the comments is between an attorney who files a suit fully intending to prosecute it on behalf of the named plaintiffs and an attorney, who from the outset, plans to substitute plaintiffs at a later date.  The instant case falls in the former category.  There is no evidence that plaintiffs did not sincerely believe that they had a cause of action when they commenced this suit.  Therefore, exercising its discretion and in the interest of justice, this Court holds that Rule 17(a) allows plaintiffs' amendment to substitute Mrs. Covert as the plaintiff herein.  Therefore, plaintiffs' motion to amend is granted.

### IV.  Has this Suit Abated?

Under Rule 17(a), the amendment to substitute Mrs. Covert as plaintiff relates back to the date of the original complaint.  Therefore, Mrs. Covert is considered to have been the plaintiff in this action when she died on December 11, 1987.  Mrs. Covert's death raises the additional issue of whether her action abated, or whether her action continued, and an additional substitution under Rule 25 of the Federal Rules of Civil Procedure is required.

▊ The abatement of an action is governed by the law of the sovereign that created the cause of action,[37] which in the instant case is the state of Louisiana.  "An action does not abate on the death of a party.  The only exception to this rule is an action to enforce a right or obligation which is strictly personal."[38]  As was discussed earlier, Mrs. Covert's personal injury right was strictly personal.  Therefore, Article 428 would require that her action to enforce that right would abate upon her death.  However, the Louisiana courts have held to the contrary.

**36.**  *See Nini v. Sanford Bros., Inc.,* 276 So.2d 262, 264–65 (La.1973).

**37.**  *Continental Assur. Co. v. American Bankshares Corp.,* 483 F.Supp. 175, 177 (E.D.Wis. 1980).

**38.**  La.Code Civ.P. art. 428.

In *J. Wilton Jones Co. v. Liberty Mutual Insurance Co.*,[39] the Louisiana Fourth Circuit Court of Appeal addressed the question of whether a personal injury action is heritable, or whether it is abated upon the death of the victim. The court held that the action is not abated, and that the victim's survivors may substitute themselves as plaintiffs in the action. In so holding, the *Jones* court relied heavily on statutory changes enacted in 1960:

1. Article 428 of the Code of Civil Procedure, which provides, unequivocally, that an action once commenced does not abate upon the death of a party;

2. Article 801 of the Code of Civil Procedure, which provides specifically that the succession representative may substitute for any deceased party in a civil action. It is important to note that no time limit is provided for in this article; and

3. Article 2315 of the Civil Code was amended to provide that "a right [of action] to recover damages under the provisions of this paragraph is property right."

The court concluded: "The question is one of abatement. LSA–C.C.P. Art. 428 specifically excludes that possibility." [40]

In *Guidry v. Theriot*,[41] the Louisiana Supreme Court agreed with *Jones* that personal injury actions do not abate upon the victim's death, but fell short of holding that personal injury *rights* are heritable.[42] Louisiana jurisprudence appears to have revived the Roman/Spanish tradition that personal injury right is strictly personal, but a personal injury action is not. Under the principles outlined in *Erie Railroad Co. v. Tompkins* [43] the federal courts must abide by a state supreme court's interpretation of its state's laws. Therefore, this Court holds that Mrs. Covert's personal injury action did not abate upon her death.

Rule 25(a)(1) of the Federal Rules of Civil Procedure provides:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

In the instant case, no one has filed a suggestion of death of Mrs. Covert in the record, nor has anyone moved to substitute the proper plaintiffs, who would be the Article 2315.1 beneficiaries. The Court shall give the Article 2315.1 beneficiaries thirty days from the date of this opinion to be substituted as plaintiffs on behalf of Mrs. Covert.

## Conclusion

For the foregoing reasons, IT IS ORDERED that plaintiffs' motion for leave to amend is GRANTED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the beneficiaries of Jane H. Covert under Article 2315.1 have thirty days to be substitut-

**39.** 248 So.2d 878 (La.App. 4th Cir.1970), *writ denied,* 259 La. 61, 249 So.2d 202 (1971).

**40.** *Id.* at 880.

**41.** 377 So.2d 319 (La.1979).

**42.** *Id.* at 324 ("There is significant difference between inheriting an action and inheriting the right to institute an action.") *See also Nathan v.*

*Touro Infirmary,* 512 So.2d 352 (La.1987); and *Succession of Hemelt,* 523 So.2d 891 (La.App. 4th Cir.1988).

**43.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ed as plaintiffs on behalf of Jane H. Covert.